# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 31, 2013

No. 13-50035
Summary Calendar

Lyle W. Cayce
Clerk

JOHN GOBER,

Plaintiff-Appellant

v.

FRANKEL FAMILY TRUST, doing business as Management Support;
EDWARD B. FRANKEL, M.D.,

Defendants-Appellees

_____

ALISSA MOORE,

Plaintiff-Appellant

v.

FRANKEL FAMILY TRUST, doing business as Management Support;
EDWARD B. FRANKEL, M.D.,

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas
Nos. 5:12-CV-83 and 5:12-CV-85

Before HIGGINBOTHAM, OWEN, and SOUTHWICK, Circuit Judges.

No. 13-50035

PER CURIAM:[*]

The district court granted summary judgment rejecting claims filed by John Gober and Alissa Moore under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, and pendent state-law claims. The defendants are their employer, Frankel Family Trust (doing business as Management Support) and its sole trustee, Edward Frankel. Gober alleges he was fired because of a disability, and Moore alleges she was fired in retaliation for opposing Gober's firing. We AFFIRM.

FACTS

Management Support, headquartered in California, owns and operates apartment complexes in Texas, Arizona, and California. Among the complexes are the Estates of Northwoods and Sedona Ranch located in San Antonio, Texas. Moore began working for the Frankel Family Trust in 2003. In February 2010, she became property manager of the Estates of Northwoods and Sedona Ranch (the "Property"). As property manager, Moore hired and supervised other employees, including maintenance personnel. Moore reported to Dave Adams, the Regional Asset Manager. Adams reported directly to Edward Frankel, the sole trustee and chief executive officer of Management Support.

In June 2010, the Property had an opening for a maintenance foreman. Moore knew Gober had experience as a lead maintenance technician from their prior work together at another apartment complex from 1999 to 2001. Moore contacted Gober about the opening, and he informed her of his recent surgery to implant a defibrillator. Several days later, Gober's cardiologist released Gober for work with restrictions. Specifically, Gober could not work more than eight hours per day or on weekends; he could not lift anything over 30 pounds; and he

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

could not be exposed to temperatures over 80 degrees Fahrenheit for more than 20 to 30 minutes. Upon his release to work, Gober contacted Moore and informed her of these restrictions. He then completed an application with Management Support and interviewed with the regional manager Adams and then with Mike Boyd, a maintenance foreman at another location. The parties dispute what Gober revealed at the interviews about his medical limitations. On June 28, 2010, Management Support hired Gober.

On his first day on the job, Gober completed new-hire forms with Moore. Gober did not indicate he needed an accommodation on the "Essential Job Functions" document. Moore also did not request medical verification of Gober's restrictions because she believed the job would not require that he work over eight hours a day or lift heavy items. On the "Employment Health Questionnaire," Gober indicated he could not lift more than 20 pounds, could not move appliances, could not install air conditioners, and could not be on call. The evidence establishes that when Gober indicated he could not be on call, he meant that, because of his eight-hour workday restriction, he could not respond to after-hours requests to return to the Property.

Moore sent the new-hire forms to Management Support's administrative offices in California. Frankel was informed of the restrictions Gober noted on the health questionnaire. Frankel directed Adams to fire Gober because being on call was an essential job function and could not be accommodated. On Friday, July 9, 2010, Adams fired Gober. Moore was upset that Adams was firing Gober. She told Adams it was "not right" and "not legal." On Monday, July 12, Frankel instructed Adams to rehire Gober if Gober's inability to be on call was temporary, but Gober told Adams it was permanent. The same day, Adams fired Moore for her mishandling Gober's application.

Moore and Gober filed complaints with the Equal Employment Opportunity Commission and the Texas Human Rights Commission. Both

No. 13-50035

individuals were issued right-to-sue notices.  Gober contended Management Support violated the Americans with Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA") by firing him because of a disability and failing to accommodate his disability.  Moore contended Management Support retaliated against her in violation of Title VII and the TCHRA.  They both brought claims for intentional infliction of emotional distress.  The district court granted summary judgment for Management Support on all claims.

Gober appeals the grant of summary judgment as to his ADA and TCHRA claims, and Moore appeals only as to her TCHRA claim.

DISCUSSION

We review appeals from a grant of summary judgment *de novo*. *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996).  Summary judgment is appropriate if there "is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

I.   *Gober's Claims*

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To prevail on a claim of disability discrimination under the ADA, Gober must prove that (1) "he has a 'disability'"; (2) "he is 'qualified' for the job"; and (3) Management Support made its adverse employment decision solely because of Gober's disability.  *Turco*, 101 F.3d at 1092.  The TCHRA "purports to correlate state law with federal law in the area of discrimination in employment."  *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999) (quotation marks omitted).  Texas "looks to analogous federal precedent for guidance when interpreting the [TCHRA]."  *Id.*  Therefore, we consider these

4

claims together and apply the legal standards for the ADA to analyze both claims.

Gober's heart condition qualifies as a disability and Management Support fired him because of this disability. The only issue, then, is whether Gober was qualified for the maintenance foreman position. A "qualified individual" is an "individual who, with or without reasonable accommodation, can perform the *essential functions* of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added). To avoid summary judgment, Gober must show (1) "that he could perform the essential functions of the job in spite of his disability" or (2) "that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." *Turco*, 101 F.3d at 1093.

To make the initial determination of whether a job function is essential, among our considerations are "[t]he employer's judgment as to which functions are essential; [w]ritten job descriptions prepared before advertising or interviewing applicants for the job; [and] [t]he amount of time spent on the job performing the function." 29 C.F.R. § 1630.2(n)(3)(i)-(iii). We also may consider whether there is evidence that the employer actually requires employees in the particular position to perform the function. *See id.* § 1630.2(n)(3)(vi)-(vii).

After a *de novo* review of the evidence, we conclude that being on call, which requires after-hours availability, is an essential function of the maintenance foreman position. That finding means Gober was not qualified for the position. As the district court noted, Frankel, the CEO of Management Support, stated that being on call is an essential function; the written job description for maintenance foreman states that being on call is a requirement; the current employees of Management Support stated that the maintenance foreman must respond as needed to after-hours emergencies; and Management Support is under a legal obligation to have an employee on call 24 hours a day.

No. 13-50035

That obligation is one to be performed by the maintenance foreman at the Property. *See* TEX. PROP. CODE § 92.020(a) ("A landlord that has [ ] on-site management . . . for a residential rental property must provide . . . a telephone number that will be answered 24 hours a day for the purpose of reporting emergencies related to a condition of the leased premises that materially affects the physical health or safety of an ordinary tenant.").

Gober disputes that it was essential that the foreman be on call, relying in part on Frankel's testimony that the document entitled "Essential Job Functions" applies to maintenance technicians and not necessarily just maintenance foremen. Frankel also testified, though, that while the foreman is a supervisory position, the foreman and the technicians' jobs, "for the most part, are very close," which is why, at that time, they used the same job functions form for the two positions. Additionally, Gober argues that the district court did not appreciate the difference between being on call and being in the on-call rotation. Essentially, Gober argues he was only required to answer his phone after hours, but a maintenance technician who was on call would report to the Property. He also argues Adams testified that maintenance foremen who are not on the on-call rotation have physically had to respond to emergencies after hours only three times during his 14 years with Management Support.[1] The evidence shows, though, that maintenance foremen are expected to report to the Property after hours when necessary, even if they are not on the on-call rotation. For example, Adams testified that the foreman who replaced Gober recently reported to the Property after hours for an air conditioner problem. The evidence Gober

---

[1] The record reflects that Adams testified about *four* specific instances where a maintenance foreman who was not on-call had to physically report to a property (for a fire, a sewer line back-up, a car driving into a building, and an air conditioner problem). Additionally, Adams never stated he was providing an exhaustive list of every time a maintenance foreman had to report to a property after hours. Adams testified that he had physically reported to properties about a dozen times.

has pointed to on appeal demonstrates that reporting to work after hours may be somewhat infrequent, but it is, nonetheless, an essential function of this position.

Gober next argues that a reasonable accommodation would have enabled him to fulfill his essential job functions.[2]  Specifically, Gober argues he was available by phone, but he could not physically respond to emergencies.  On appeal, he argues Moore testified that Gober never told her he would not come back to the Property after hours.  This testimony, though, contradicts the undisputed medical restriction that Gober could not work more than eight hours per day.  Gober also argues Management Support should have engaged in an "interactive process" to determine an appropriate accommodation.  Yet Gober specifically told Management Support that being on call was "not acceptable."  Task reassignment is not a reasonable accommodation if the task is an essential function of the job. *Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 710 (5th Cir. 1997).

Because we conclude that being on call and able to report in person to the Property is an essential job function, Management Support was not required to relieve Gober of this duty, modify the duty, or reassign other employees to the duty. *See id.*  Accordingly, we need not address Gober's argument that accommodating him would not have been an undue burden. Summary judgment was appropriate as to Gober's claims.

## II.    Moore's Claim

To make out a *prima facie* claim for retaliation under the TCHRA, Moore must show that (1) she "engaged in a protected activity"; (2) there was an

---

[2] Management Support agreed to accommodate Gober's lifting and air conditioner installation restrictions. Management Support states it could not have accommodated Gober's restriction of not working in high temperatures, but because Gober did not list this restriction in his new-hire paperwork, Management Support was unaware of the restriction when it fired Gober.

adverse employment action; and (3) there was a causal link "between the protected activity and the adverse action." *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004). A "protected activity" includes opposing discriminatory practices. TEX. LAB. CODE § 21.055(1). If a plaintiff establishes a *prima facie* case, "the burden then shifts to the defendant to demonstrate a legitimate[,] nondiscriminatory purpose for the employment action." *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). If the employer meets this burden, "the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose." *Id.* We apply a "but for" test, requiring the employee to prove that but for the protected activity she would not have been discharged. *Pineda*, 360 F.3d at 487.

Like the district court, we accept that Moore has made a *prima facie* case of retaliation. Management Support, though, met its burden of providing a non-retaliatory reason for why it fired Moore and why her firing was in close proximity to her protected action. Moore has failed to meet her burden of presenting evidence that would prove that but for the protected action she would not have been fired. *Id.* Moore admitted making serious mistakes regarding Gober's application, which is a legitimate non-retaliatory justification for her firing. Moore was responsible for intake of Gober's new hire documents and admitted she made errors in reviewing it and "missed key points." She was fired just one business day after her mistakes were brought to Frankel's attention.

Moore challenges the district court's conclusion that she did not present evidence to rebut Management Support's claim that she was fired because of her mishandling of Gober's application. Moore points out she was fired after she told Adams that firing Gober was based on his disability and was "not right." The district court found no evidence that Frankel, the sole decision maker, knew anything other than that Moore was upset about Gober's firing. Both Frankel and Adams testified that Frankel was aware only that Moore was "upset" about

Gober's firing.  On appeal, Moore states that if her firing was not in retaliation, she would have been fired on Friday, July 9, 2010, when the problems with Gober's application were identified, instead of on Monday, July 12, after Adams spoke with Frankel about Moore's reaction to Gober's firing.  Moore argues this time line raises a dispute as to the reason for her firing.  Even though suspicious timing can be evidence of pretext, it is sufficient to survive summary judgment only when combined "with other significant evidence of pretext." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999).  Once the employer offers a legitimate, non-discriminatory reason that explains the timing and the reason for the adverse action, the plaintiff must offer some evidence from which the jury can infer retaliation was the real motive.  *Id.*

Moore makes other arguments:  (1) Adams and Boyd approved of Gober's hiring but were not reprimanded; (2) Moore had an "exemplary career" with Management Support; (3) Management Support did not follow its normal procedure when firing her; and (4) Adams testified he did not know of another instance in which an apartment manager at Management Support was fired for improperly hiring an employee.  Such evidence is relevant to whether there is a causal link between the protected activity and the employment decision. *Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1024 (5th Cir. 2011).  None of these arguments, though, refutes our dispositive finding that Frankel did not know anything other than that Moore was upset.  If Frankel, who decided to fire Moore, was unaware of her protected activity, this evidence does not support that she would not have been fired in the absence of having engaged in protected activity.

AFFIRMED.