# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————————

No. 12-51074

————————

United States Court of Appeals
Fifth Circuit

**FILED**

November 6, 2013

Lyle W. Cayce
Clerk

JEFFREY NEELY, also known as Jeffrey A. Neely,

Plaintiff–Appellant,

versus

PSEG TEXAS, LIMITED PARTNERSHIP;
PUBLIC SERVICE ENTERPRISE GROUP, INCORPORATED,

Defendants–Appellees.

————————————————

Appeal from the United States District Court
for the Western District of Texas

————————————————

Before SMITH, PRADO, and ELROD, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Jeffrey Neely appeals a judgment based on an adverse jury verdict.  We find no error and affirm.

No. 12-51074

## I.

Neely was a control-room operator for PSEG Texas, Limited Partnership, who, after a series of verbal altercations with his supervisors, was suspended and ultimately terminated, then diagnosed with major depressive disorder and generalized anxiety disorder severe without psychosis. He sued that employer and Public Service Enterprise Group, Incorporated (jointly "PSEG"), alleging violations of the Americans with Disabilities Act ("ADA"), Title VII, and the Family and Medical Leave Act ("FMLA"). The district court dismissed the FMLA claim, and Neely voluntarily dropped his Title VII retaliation claim before trial. The case went to a jury on the remaining claims of discrimination, retaliation, and failure to provide reasonable accommodations under the ADA.

During trial, Neely objected to two jury interrogatories, both of which were predicate questions to the termination and failure-to-accommodate claims and asked whether Neely was "a qualified individual with a disability." The jury answered "No" to both predicate questions and to the question regarding retaliation.

## II.

We review for abuse of discretion the submission of special-verdict questions, "examin[ing] whether, when read as a whole and in conjunction with the general charge, the interrogatories adequately presented the contested issues to a jury." *LeBoeuf v. K-Mart Corp.*, 888 F.2d 330, 334 (5th Cir. 1989) (citation and internal quotation marks omitted). If there is error, we apply a two-part analysis to determine whether to reverse. *See C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 700–01 (5th Cir. 2001). First, "a verdict based judgment will be reversed because of an erroneous instruction only when the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has

No. 12-51074

been properly guided in its deliberations." *Hiltgen v. Sumrall*, 47 F.3d 695, 703 (5th Cir. 1995) (quoting *Mayo v. Borden, Inc.*, 784 F.2d 671, 672 (5th Cir. 1986)). Second, "even where a jury instruction was erroneous, we will not reverse if we determine, based on the entire record, that the challenged instruction could not have affected the outcome." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 293 (5th Cir. 2007) (citation and internal quotation marks omitted)).

## III.

Neely argues that the district court erred in submitting the first question—"Was a Plaintiff a qualified individual with a disability?"—as a predicate to a finding of discrimination regarding his termination claim under the ADA. His main contention is that the inclusion of the words "with a disability" is contrary to the ADA as amended by the ADA Amendments Act of 2008 ("ADAAA"). The intent of the ADAAA was to expand the coverage of the ADA—so the argument goes—by simplifying the analysis of "disability" and focusing the finder of fact on whether there was discrimination in the adverse-employment action. Therefore, to require a finding of "disability" as a predicate to the determination of whether Neely was terminated on the basis of this actual or perceived impairment is in direct conflict with the purpose of the congressional changes. To bolster this argument, Neely points to several alterations of the ADA text by the ADAAA as direct evidence of this intent. An examination of the alterations to the ADAAA, however, shows that the court did not abuse its discretion in submitting these jury instructions.

## A.

In crafting the ADAAA, Congress intended "that the primary object of

3

attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations[ ] and . . . that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."[1] To that end, the ADAAA primarily focuses on broadening the definition of "disability" by singling out and superseding *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), and *Toyota Motor Manufacturing Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002).[2] Because those two decisions interpreted congressional intent to narrow the scope of the words "substantially limits" and "major" and the "regarded as" prong in the ADA's definition of disability,[3] Congress added 42 U.S.C. § 12102(2)–(4) to correct that perceived misinterpretation.

Although the text of the ADAAA expresses Congress's intention to broaden the definition and coverage of the term "disability,"[4] it in no way eliminated the term from the ADA or the need to prove a disability on a claim of disability discrimination. Even under the ADA as amended by the ADAAA, "[t]o prevail on a claim of disability discrimination under the ADA, [a party] must prove that (1) *he has a disability*; (2) he is qualified for the job; and (3) [the

---

[1] Pub. L. No. 110–325, § 2(b)(5), 122 Stat. 3553 (Sept. 25, 2008) (codified at 42 U.S.C. § 1201 (Note)).

[2] *See* Pub. L. No. 110–325, § 2(a)(4)–(6), (2)(b)(2)–(5) (listing congressional findings and purposes regarding the rejection of the rulings in these cases).

[3] *See Toyota Motor*, 534 U.S. at 193–99; *Sutton*, 527 U.S. at 481–94; *see also* 42 U.S.C. § 12102(1) (2012) ("The term "disability" means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)).").

[4] *See, e.g.,* 42 U.S.C. § 12102(4)(A) (2012) ("The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.").

covered entity] made its adverse employment decision [ ] because of [the party's] disability."[5]  In other words, though the ADAAA makes it *easier* to prove a disability, it does not *absolve* a party from proving one.

The ADAAA also—as Neely suggests—altered the text of the ADA in regard to the use of the phrase "with a disability."  First, harmonizing the ADA with Title VII,[6] the phrase "qualified individual with a disability because of the disability of such individual" was replaced with "qualified individual on the basis of disability" in describing the "general rule" under the ADA.[7]  Second, the ADAAA deleted the phrase "with a disability" from the term "Qualified individual with a disability" and its definition, leaving it merely as the term "Qualified individual."[8]  It did not, however, eliminate every usage of the phrase "qualified individual with a disability" in the ADA:  It still appears twice during the discussion of accommodation.[9]

Despite Neely's assertions to the contrary, these changes do not demonstrate an intent to underscore the unimportance of "disability" under the ADA or suggest that the use of the phrase "qualified individual with a disability" is erroneous.  These alterations of the definition section come under the heading of "CONFORMING AMENDMENTS" in Section 5 of the ADAAA, and they immediately follow the alteration of the general rule to conform to Title VII as

---

[5] *Gober v. Frankel Family Trust*, No. 13-50035, 2013 WL 3929971, at \*2 (5th Cir. July 31, 2013) (per curiam) (unpublished) (emphasis added, citation and internal quotation marks omitted); *see also Atkins v. Salazar*, 677 F.3d 667, 675 (5th Cir. 2011).

[6] *Compare* 42 U.S.C. § 2000e-2(b) (2012) ("It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment . . . *on the basis of* his race, color, religion, sex or national origin." (emphasis added)), *with* 42 U.S.C. § 12112(a) (2012) ("No covered entity shall discriminate against a qualified individual *on the basis of* disability . . . ." (emphasis added)).

[7] Pub. L. No. 110–325, § 5(a)(1) (codified at 42 U.S.C. § 12112(a)).

[8] *Id.* § 5(c)(1) (codified at 42 U.S.C. § 12111(8)).

[9] *See* 42 U.S.C. § 12112(b)(5)(A)–(B) (2012).

discussed above. Thus, the changes appear to be an attempt to harmonize the language and terminology of the statute, which used the term "qualified individual" as a stand-alone term without definition even before passage of the ADAAA.[10]

Because the stand-alone term was utilized without "with a disability"—and the addition of "with a disability" in the term did not affect the definition of "qualified individual"[11]—it made sense for Congress to alter the definition of terms accordingly. Ascribing any additional motivation to these alterations requires leaps in logic that are not justified by the changes or the acts themselves. Therefore, the ADAAA's alterations should not be construed as a repudiation of the use of the phrase "qualified individual with a disability" or a signal that its use in jury interrogatories is error.

Considering the extent of the changes and the codified purpose of the ADAAA—and viewing the jury charge as a whole—the interrogatories appear adequately to have presented the contested issues. Although the jury interrogatories track those found in the Fifth Circuit pattern jury instructions,[12] which have not been revised to reflect the changes made by the ADAAA, the court properly altered the definitions of "disability" and "qualified individual" to mirror the new law—most importantly in regard to the "regarded as" prong

---

[10] *See* 42 U.S.C. § 12112(b)(4) (2012) ("[E]xcluding or otherwise denying equal jobs or benefits to a qualified individual because of a known disability of an individual with whom the qualified individual is known to have a relationship or association.").

[11] This is evident in the fact that the only alteration to the definition of the term required after deleting "with a disability" was the deletion of that same three-word phrase itself. "Disability" was already defined as a separate term under the Act, and its inclusion did not alter the meaning of "qualified individual."

[12] Normally modeling of jury instructions on this circuit's pattern instructions would likely be treated as nonbinding, persuasive authority. *See, e.g., United States v. Montford*, 27 F.3d 137, 140 (5th Cir. 1994) ("[O]ne of our own pattern jury instructions certainly should be treated as persuasive authority . . . ."). In this instance, however, because Neely's claim concerns changes in the law that have yet to be incorporated, this authority is less persuasive.

No. 12-51074

of disability at issue. Thus, because the jury-instruction definitions of "disability" and "qualified individual" properly conform to the ADAAA (and because the term "disability," even in its broader sense, remains to be proven in claims under the ADA), there is no abuse of discretion—or even error—in the use of the terms in the first special verdict question.

B.

Neely maintains that the district court erred in submitting the third jury question—"Was a Plaintiff a qualified individual with a disability?"—as a predicate to finding a failure to accommodate under the ADA. Similar to his reasoning regarding the first jury question, this argument claims that this predicate question is a misstatement of law that confused the jurors and terminated their deliberation before reaching the central question of accommodation. That argument is unpersuasive, however, because unlike the situation in *EEOC v. Manville Sales Corp.*, 27 F.3d 1089 (5th Cir. 1994)—which Neely cites as support—the question objected to does not misstate the law.

After the passage of the ADAAA, a plaintiff in this circuit "must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a *'qualified individual with a disability;'* (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La. Dep't of Justice, Office of the Att'y Gen.*, No. 12-31065, 740 F.3d 450, ___, 2013 WL 5178846, at *1 (5th Cir. Sept. 16, 2013) (emphasis added). Unlike the wording in termination claims under the ADA, the post-ADAAA language of the ADA regarding accommodation claims continues to

use the phrase "qualified individual with a disability."[13]  Additionally, considering the jury charge as a whole, the definition of disability for this context—i.e., "actual" disability—is properly defined in the jury instructions to include the abrogating language of the new ADAAA, broadening its definition.

Because the district court did not abuse its discretion in either jury interrogatory, there is no need to consider the two-part analysis to determine whether the error requires reversal.  No valid argument has been presented that the interrogatories did not adequately present the contested issues to the jury, so the judgment is AFFIRMED.

---

[13] *See* 42 U.S.C. § 12112(b)(5)(A)–(B) (2012) (mentioning the phrase "qualified individual with a disability" twice in relation to failure-to-accommodate claims).