# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50133

United States Court of Appeals
Fifth Circuit

**FILED**
December 11, 2015

Lyle W. Cayce
Clerk

WILLIE L. STARTS, JR.,

Plaintiff–Appellant

v.

MARS CHOCOLATE NORTH AMERICA, L.L.C.,

Defendant–Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:14-CV-64

Before STEWART, Chief Judge, and CLEMENT and ELROD, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Willie L. Starts, Jr., sued his former employer, Defendant-Appellee Mars Chocolate North America, L.L.C., for disability discrimination and failure to accommodate in violation of the Americans with Disabilities Act of 1990 (ADA), as amended by the ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. § 12101 *et seq.* Starts appeals the district court's grant of summary judgment in Mars's favor. Because there is no genuine issue

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-50133

of material fact as to whether Starts was a "qualified individual" under the ADA, we AFFIRM.

## I.

Starts worked for Mars from 1997 to 2013 at a Mars plant in Waco where candy products are produced. At the time of Starts's employment termination in 2013, his work involved operating packing machinery, loading film onto bagging lines, and preventative machine maintenance, as well as other tasks like training and paperwork.

Starts suffered a work-related back injury in February 2012. After notifying Mars of the back injury, he received worker's compensation benefits and took leave under the Family and Medical Leave Act (FMLA). Starts's back injury was initially diagnosed as a back sprain or strain but developed into multiple conditions, including lesion of the sciatic nerve, lumbar disc degeneration, sciatica, and lumbar radiculopathy. Starts regularly saw a doctor who provided Starts with medical work restrictions, which included at times a fifty pound lifting restriction, a twenty pound lifting restriction, an assignment of 'light duty,' and a four-hour per-day work restriction. Mars complied with Starts's medical work restrictions, and Starts continued to work.

Prior to and during this time of accommodation, Starts accumulated unauthorized absences.[1] Mars uses a point system to record unauthorized absences, and, under Mars policy, eight or more attendance points could result in termination of employment. By October 2012, Starts had accumulated 23.5 attendance points for that year and was given a final warning.

---

[1] Some of Starts's absences were covered by his FMLA leave benefits, but others were not. Mars considered absences "unauthorized" if they were not authorized by medical documentation or if they did not otherwise fall into other categories of authorized absences, such as approved sick leave or vacation leave.

No. 15-50133

At Starts's final worker's compensation medical exam on March 5, 2013, his physician recommended that he not lift more than twenty pounds, but he was otherwise cleared for full-time work of eight-hour shifts. Mars met with Starts on March 7, 2013, to discuss accommodations. Mars agreed to accommodate Starts's lifting restriction and, after discussing accommodation options, both Mars and Starts agreed that he should continue working in the packing room where there were lifts to accommodate his lifting restriction. Mars informed Starts that his FMLA benefits, which included his leave benefits, were now exhausted and that he was expected to work his full eight-hour shifts because no medical documentation permitted a reduced schedule.

Thereafter, Starts missed the entire day of work on March 9 and left work early on March 7, 8, 10, and 11. Starts did not provide medical documentation to justify those absences, nor were the absences otherwise approved.[2] When Starts left early on March 11, 2013, he was told not to return until Mars contacted him. While Starts was on leave, his supervisors reviewed his attendance record. Eleven days later, upon completion of the review, Mars terminated Starts's employment because he had too many unapproved absences. At the time of the termination, Starts had accumulated a total of 31 attendance points within the previous twelve months.

Starts filed his complaint against Mars in March 2014, alleging that Mars unlawfully discriminated against him in violation of the ADA by failing to provide reasonable accommodations and by terminating his employment because of his disability. On November 10, 2014, Mars filed a motion for summary judgment seeking dismissal of Starts's claims. The district court

---

[2] Starts alleges he was told by Mars to go home early on March 11 after he complained of severe back pain. Mars disputes this, alleging that Starts left on his own. The disputed fact is not material, as Mars's reason for terminating Starts's employment does not depend on whether he was sent home or went home on his own.

granted the motion on the bases that Starts was not "disabled" for ADA purposes at the time of his termination and was not a "qualified individual" because of his inability to attend work even with an accommodation.  Starts timely appealed.

## II.

We review de novo a district court's grant of summary judgment.  *Rogers v. Bromac Title Servs., LLC*, 755 F.3d 347, 350 (5th Cir. 2014).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Rogers*, 755 F.3d at 350.  All facts and inferences are construed in the light most favorable to the nonmoving party. *Id.*

Starts asserts his disability discrimination and failure to accommodate claims under the amended ADA.  "[T]o prevail on a claim of disability discrimination under the ADA, a party must prove that (1) he has a disability; (2) he is qualified for the job; and (3) the covered entity made its adverse employment decision because of the party's disability." *Neely v. PSEG Tex., Ltd.*, 735 F.3d 242, 245 (5th Cir. 2013) (alterations omitted).  To prevail on a failure to accommodate claim, a party must prove: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Id.* at 247 (alterations omitted) (citing 42 U.S.C. § 12112(b)(5)).

For either of Starts's claims to survive summary judgment, the evidence must establish at least a genuine dispute as to whether Starts was a "qualified

individual" at the time of the alleged unlawful discrimination.[3] *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 695 (5th Cir. 2014); *see also Reeves v. Dollar Gen. Corp.*, 180 F.3d 264, 1999 WL 274587, at *2 n.2 (5th Cir. Apr. 23, 1999) ("In assessing whether the plaintiff is a qualified individual, we focus on whether he or she was qualified at the time of his or her termination."). An individual is qualified for his or her job under the ADA if, "with or without reasonable accommodation," the individual "can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Here, Mars asserts that attendance is an essential function of Starts's job, and Starts does not contend otherwise. Starts argues, rather, that he would have been able to perform the essential functions of his job if Mars had provided him with a four-hour workday accommodation. We reject Starts's argument on two grounds. First, Starts never asked Mars to allow him to go back to a four-hour workday. Second, for the reasons that follow, Starts's evidence does not create a genuine dispute as to whether he would have been able to attend work as required even with a four-hour work restriction.

Starts testified in his deposition that the reason for his work absences was his severe back pain. To alleviate his back pain, Starts had to take prescription pain medication, and because of the nature of his job, which required working on machinery, Starts was not permitted to work while on prescription pain medicine. In light of this evidence, the district court reasoned that Starts was not a "qualified individual" because even if Mars had allowed

---

[3] The district court granted summary judgment for Mars on two grounds: (1) Starts was not a "qualified individual," and (2) Starts was not "disabled" under the amended ADA. We are doubtful that the district court's analysis of whether Starts was disabled conforms to the standards of the ADAAA, especially in light of the guidance in the EEOC's Appendix to 29 C.F.R. § 1630. But because we affirm the district court's determination that Starts was not a "qualified individual," we need not reach the issue of whether Starts was disabled for ADA purposes.

No. 15-50133

Starts to return to a four-hour workday, there was no evidence that Starts would have been able to work the entire four hours without having to leave due to his back pain—which could, and did, occur at unpredictable times, including within a four-hour shift. We agree. *See Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) (holding that, even if plaintiff's absences were linked to his alleged disability, plaintiff was still not a "qualified individual" for ADA purposes because (1) attendance was an essential function of his job and (2) plaintiff failed to show that he could have attended work as required even with the requested accommodation).

AFFIRMED.