# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-11492
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
June 19, 2019

Lyle W. Cayce
Clerk

DANIELLE CLARK,

     Plaintiff - Appellant

v.

CHARTER COMMUNICATIONS, L.L.C.,

     Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-1085

Before HIGGINBOTHAM, ELROD, and DUNCAN Circuit Judges.

PER CURIAM:*

    Danielle Clark sues her employer Charter Communications, alleging disability discrimination and harassment, failure to provide reasonable accommodations and to engage in the iterative process regarding such accommodations, and retaliation in violation of the Americans with Disabilities Act and the Texas Commission on Human Rights Act. Charter

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-11492

moved for summary judgment on all of Clark's claims. We AFFIRM the district court's decision to grant the motion.

I.

Charter Communications LLC is a telecommunications service provider with over six million customers across nearly three dozen states. Charter's Regional Operations Center in Dallas serves as the "nerve center" of its network in North Texas. Here, Charter employs approximately fifty specialists to monitor computer displays tracking the network's status in real time. When the system displays an outage, a specialist will immediately dispatch a technician to the location. Specialists then monitor the progress of the technician's restoration efforts; if the work exceeds certain time thresholds, the specialist must notify supervisors. Specialists also monitor the Center's email account, responding to customer problems or questions, as well as the Center's telephone line, to communicate with technicians in the field. Specialists rotate between these tasks, often handling each responsibility alone during their shifts.

Danielle Clark was employed as a specialist in the Dallas Operations Center beginning in Fall of 2015.[1] After Clark fell asleep during a training session, Charter gave her a week off to seek medical testing, during which she was diagnosed with narcolepsy, a neurological condition that caused her to experience the uncontrolled sudden onset of sleep. Clark had problems staying awake during her shifts. Clark concedes she fell asleep at work, including while she was surveilling the Charter network for outages and during work coordinating technicians' repairs of the network. Clark also experienced

---

[1] Clark was originally hired as a customer service representative by Time Warner Cable in 2012. In November 2015, her position changed to operations center specialist, and in May 2016 ownership changed to Charter Communications, which became Clark's employer.

episodes in which she fell asleep, woke up, and did not realize that she had been asleep. Co-workers found Clark sleeping while she as supposed to be monitoring the network, as well as in the middle of phone calls with technicians in the field.

Clark's supervisors worked with her to mitigate the effects of narcolepsy on her work. For example, supervisors permitted Clark to take an additional break between shifts to nap. In December 2015, Clark's supervisors excused her from a randomly assigned night shift on the grounds that narcolepsy made her unable to work at night. Supervisors also agreed Clark would take two days every month as leave to attend doctor's appointments and otherwise address her narcolepsy. Notwithstanding these accommodations, Clark continued to fall asleep during her shifts.

Following her exemption from night-shift duties, some co-workers stopped engaging with Clark, others made negative comments about her breaks, and spoke about wanting Clark to be fired. In February 2016, Clark emailed her supervisors about animosity from co-workers regarding her narcolepsy, but she alleges they failed to respond sufficiently. Clark's supervisors provided her feedback and "coaching" less often than to other coworkers. Workplace stress exacerbated the effects of Clark's narcolepsy.

In October 2016, one of Clark's supervisors informed her that she had nearly exhausted her entitlement to FMLA leave, but that Charter would allow her to take an unpaid leave of absence to address her narcolepsy. Clark was placed on leave on November 6, 2016, with a return date of December 2, 2016. During this period, Charter agreed upon several extensions of Clark's leave, ultimately until March 2017. When Clark requested a 15-minute break every two hours upon her return, Charter agreed to this accommodation.

On January 23, 2017, Clark filed charges of discrimination with the Equal Employment Opportunity Commission and the Texas Work

No. 18-11492

Commission. On March 9, 2017, she received notice of her right to sue from the EEOC. On April 21, 2017, Clark sued Charter in the district court, alleging disability discrimination, harassment, failure to accommodate, failure to engage in the interactive process, and retaliation in violation of the Americans with Disabilities Act and the Texas Commission on Human Rights Act. Charter moved for summary judgment, and the district court granted the motion. This appeal followed.

## II.

A party is due summary judgment when, drawing all reasonable inferences in favor of the nonmovant, the record evidence indicates no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.[2] We review the district court's grant of summary judgment de novo.[3]

## A.

Under the Americans with Disabilities Act, an employer may not discriminate against a qualified individual on the basis of disability.[4] A plaintiff may "present direct evidence that she was discriminated against because of her disability."[5] Alternatively, in the absence of direct evidence of discrimination, the plaintiff "must establish: (1) [she] has a disability, or was regarded as disabled; (2) was qualified for the job; and (3) was subject to an adverse employment decision on account of [her] disability."[6] In connection with the second element, to establish that she is a "qualified individual,"[7] the plaintiff must show she could "perform the essential functions of the job in

---

[2] FED. R. CIV. P. 56(a).

[3] *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015).

[4] *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017) (citing 42 U.S.C. § 12112(a)).

[5] *Id.*

[6] *Id.*

[7] *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016).

spite of [her] disability," or that she could do so with an identified "reasonable accommodation of [her] disability."[8] A plaintiff must also be a qualified individual to bring a claim against an employer for failure to make reasonable accommodation and engage in the iterative process to determine a reasonable accommodation.[9] A disability discrimination claim under the Texas statute maps onto federal disability discrimination law, and courts "appl[y] the legal standards for the ADA" to such claims.[10]

The district court held that Clark failed to establish that "she was otherwise qualified for the position and . . . duties" of an specialist at Charter's Regional Operations Center. In her deposition, Clark conceded that her physicians advised that she would continue to fall asleep at unpredictable times during her shift, and would require unplanned 10-minute naps at an unknown frequency throughout the workday. Clark argues that staying awake was not an essential function of her role, that "speedy and accurate performance . . . are admirable and desirable qualities" in a specialist, but not essential ones. There is no record support for this contention. Clark fails to point us to any genuine factual dispute regarding whether a specialist could fulfill her tasks when she might sleep through a time-sensitive network alert or an urgent call from a technician addressing an outage. The district court did not err in finding that Clark was not a qualified individual, and therefore that

---

[8] *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996).

[9] *Credeur v. Louisiana,* 860 F.3d 785, 792 (5th Cir. 2017).

[10] *Gober v. Frankel Family Trust,* 537 F. App'x 518, 520 (5th Cir. 2013) (unpublished); *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999) ("The Texas Commission on Human Rights Act is modeled after federal civil rights law. The Act purports to correlate state law with federal law in the area of discrimination in employment. Thus, in light of the Legislature's express purpose, we look to analogous federal precedent for guidance when interpreting the Texas Act." (internal citations and quotation marks omitted)); *Barricks v. Minyard Food Stores, Inc.*, 170 F.3d 184 (5th Cir. 1999) (unpublished) ("To maintain a cause of action under TCHRA, a plaintiff must establish essentially the same elements of proof as if proceedings under the ADA.").

No. 18-11492

Charter was due summary judgment on the disability-discrimination and failure-to-accommodate claims.

## B.

To establish a prima facie claim of retaliation under the ADA, Clark was required to show that (1) she participated in an activity protected by the ADA; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protective activity and the adverse action.[11] To survive summary judgment, the plaintiff must show a dispute based in substantial evidence regarding whether the employer would not have taken the action but for the protected activity.[12]

Clark raises two potential adverse employment actions. First, in her initial brief she argues that she was "forc[ed]" to take unpaid leave during which she lost insurance benefits and access to health care. Although she concedes that "involuntary leave in lieu of attendance discipline is not an adverse job action," she asserts that at the time she was forced on leave she "had several weeks of FMLA leave remaining." As Charter points out, however, here Clark misrepresents the record. Clark cites a September 12, 2016 letter stating that Clark had two weeks remaining in her FMLA leave entitlement. But Clark's unpaid leave commenced almost two months later, on November 6, 2017, at which point Clark had exhausted her FMLA leave. In other words, there is no genuine dispute that Clark's unpaid leave was made after she had exhausted her paid leave and would otherwise have faced attendance discipline. As such, by her own admission, it was not an adverse employment action.[13]

---

[11] *Feist v. Louisiana,* 730 F.3d 450, 454 (5th Cir. 2013).

[12] *Id.* (quoting *Long v. Eastfield College,* 88 F.3d 300, 308 (5th Cir. 1996)).

[13] *Barricks,* 170 F.3d 184 (5th Cir. 1999).

No. 18-11492

Second, Clark describes a change in her supervisor Michelle Ochoa's "demeanor and attitude" after Clark returned from "forced medical leave," putting "Clark's job performance in substantial jeopardy." Clark cites to a passage from her deposition in which she recalls that Ochoa "would not respond to text messages like she always had" and stopped providing positive reviews of Clark's work following Clark's complaints to human resources. Clark's argument here appear to attribute Ochoa's change in demeanor and attitude to Clark's availing herself of disability associated leave; but, if so, her argument is contradicted by the record: the leave in question postdates the alleged change in Ochoa's attitude. Assuming arguendo that Clark attributes Ochoa's change to Clark's complaints, the claim still cannot survive summary judgment because the one sentence she provides fails to support her assertion that the decreased frequency of text messages and positive reviews is attributable to retaliatory intent. The district court did not err in finding Clark failed to create a genuine issue of material fact as to the elements of her retaliation claim.

## C.

We have recognized a cause of action for disability-based harassment under the ADA, modeling it after a similar claim under Title VII.[14] To succeed on such a claim, the plaintiff must demonstrate (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.[15] "The legal standard

---

[14] *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003).
[15] *Id.*

for workplace harassment in this circuit is . . . high. For workplace abuse to rise to the level of an actionable offense the disability-based harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment."[16] Conduct that is "insensitive and rude," including "hard words or cold-shouldering," does not rise to the level of actionable harassment.[17]

Clark's harassment claim is based in the conduct of her supervisor, Rob Fox, a conversation with her supervisor Michelle Ochoa, and interactions with a number of co-workers. Clark describes in an affidavit that, upon learning that Clark had sought an exemption from the night shift, Fox raised his voice and became visibly upset, expressing displeasure that Clark had applied knowing that night shifts were required in her position. Clark characterizes Fox's decision to grant her a period of leave after she had exhausted her FMLA leave entitlement as part of the same harassment. Clark also describes harassment by her coworkers, their snide comments, and an overheard conversation in which a coworker described a desire for Clark's termination. When Clark reported her coworkers' conduct, Ochoa told her she was "being too sensitive" and human resources did not act upon the information.

The district court granted Charter summary judgment on Clark's harassment claim, reasoning that "the evidence cited by Plaintiff does not rise to the level of actionable harassment by her co-workers based on disability." We agree. Clark's supervisors' expressions of displeasure and insufficient sympathy must be juxtaposed with their willingness to grant the accommodations that Clark requested of Charter—from exemption from the night shift, to breaks, and leave to address her narcolepsy. As the district court

---

[16] *Id.*

[17] *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 564 (5th Cir. 1998).

found, in this context "[m]ere displeasure from a coworker is insufficient to state a claim of actionable harassment." Likewise, Clark's co-workers may have behaved with insensitivity and rudely, but this is not actionable harassment. The district court did not err in granting summary judgment to Charter on this claim.

## III.

We AFFIRM the district court's grant of summary judgment to Charter.