# United States Court of Appeals for the Fifth Circuit

No. 24-60382

United States Court of Appeals
Fifth Circuit

**FILED**

August 22, 2025

Lyle W. Cayce
Clerk

Brenda Gross,

*Plaintiff—Appellant*,

*versus*

Carlisle Construction Materials, L.L.C.,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:23-CV-38

_____

Before Wiener, Douglas, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Defendant-Appellee Carlisle Construction Materials, L.L.C. ("Carlisle") terminated Plaintiff-Appellant Brenda Gross's employment after she transitioned to long-term disability. She brought this suit, arguing that she requested, and was denied, accommodations under the Americans with Disabilities Act ("ADA") and was wrongfully terminated. The district court granted summary judgment to Carlisle. We AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-60382

## I

## A

Gross suffers from diabetes. In 2004, Carlisle, "a diversified manufacturer and supplier of premium building products for commercial and residential construction markets," hired Gross at its plant in Senatobia, Mississippi.[1] She initially worked as a forklift operator, and then moved to packaging in about 2007 or 2008; she also worked in receiving and shipping on an as-needed basis. She spent most of her time—and the time at issue in this appeal—as a production operator. In that role, she monitored, recorded, and adjusted machines to ensure proper operation of the manufacturing equipment. The position consisted "of 70% standing and lifting, 15% walking, and 15% squatting, bending, reaching above shoulders, twisting[,] and kneeling." "It also require[d] frequent lifting of up to 10 pounds and occasionally pushing and pulling of up to 70 pounds." John Mayer, Gross's immediate supervisor, referred to her as an "excellent employee."

In 2015 or 2016, Gross's diabetes gave rise to complications, requiring the amputation of two and one-half toes on her right foot and three toes on her left foot. These amputations did not immediately result in her inability to work, but, in 2016 or 2017, she began to request transfer to a position that would allow her to sit more because standing for extended periods of time was too painful. At that time, her production operator role required her to stand between eight and twelve hours each day, causing pain in her back, down her leg, and into her foot.

Gross's requests for accommodation took various forms. First, in 2016 or 2017, a Carlisle employee promised her "a position in the [quality

---

[1] Carlisle was aware that Gross had diabetes when it hired her.

control] lab." But when the time came for her to transfer, Gross's superior informed her that she could not be moved because "he needed [her] on the line" as "the most experienced" production operator. Next, prior to taking medical leave in September 2021, Gross requested that the company alter its "line-watcher" position. Mayer told her that it was not feasible to alter the position as requested.[2] In November 2021, she learned that a co-worker employed as a receiving clerk—a position that could be performed sitting down—had passed away. She spoke to Mayer and requested transfer to that position, and he informed her that it would likely be posted for open applications. But Carlisle never posted the job. Instead, it gave the position to another individual who did not have a disability in what Gross calls "an under-the-table" transaction. At no time did Gross's position change, though Mayer often provided minor accommodations throughout the day, "tr[ying] to work with [her]" whenever she was struggling.

Gross's transfer to long-term disability was precipitated by an ulcer that appeared on the partially amputated toe on her right foot in 2021. The ulcer had previously healed and her doctor had approved her to return to work, but "standing on the concrete with the steel-toed shoes, with the weight-bearing on it," caused it to "burst back open." Consequently, she

_____

[2] At the time, the line-watcher position was not an individual role. Instead, the production line workers each worked the position in rotating ten-minute shifts. During their shift, the line-watcher, who was provided a chair, watched the others package, looking for any defects. But, despite Gross's suggestions, Mayer explained that the position is "not a position where you can stay sat." Instead, the line-watcher has to "consistently mov[e] back and forth" a "12 foot wide sheet," inspecting it with a flashlight. The line-watcher must also, at times, "tak[e] 20 to 40 pound rolls of edge trim . . . that is wound upon a spool . . . and put it in a box." Mayer described the position as physical. Moreover, "any times where [Carlisle] ever tried to move away from the ten-minute rotation, [it] found out that that actually is counterproductive," because the position's monotony would cause the line-watcher to "zone out." Carlisle declined to move her for this reason.

went on medical leave for between six and eight weeks in September 2021. The ulcer healed, and she returned to work.

But within weeks, it flared up again. Gross went on leave and never returned to work. Her doctor provided a letter that he would permit her to return to work if Carlisle allowed her to work while seated. Because Gross could no longer complete the physical requirements of her position, Carlisle's benefits administrator transitioned her to long-term disability. But "[i]t is Carlisle's policy to end an employee's employment when they transition to long-term disability as the employee is not able to return to work." Accordingly, Carlisle terminated Gross on April 5, 2022, after eighteen years of employment. There were no vacant positions at Carlisle's Senatobia plant at that time.[3]

## B

On May 26, 2022, Gross filed a charge with the Equal Employment Opportunity Commission ("EEOC") claiming that (1) Carlisle did not inform her of the reason for her termination, (2) Carlisle "refused to accommodate" her, and (3) she explicitly requested to be moved to a vacant position instead of being terminated. She asked the EEOC to determine whether she was the victim of disability discrimination. It issued a notice of right to sue on December 15, 2022. Subsequently, on March 3, 2023, Gross filed her complaint against Carlisle, requesting damages for discriminatory discharge and failure to accommodate under the ADA.

Carlisle answered and eventually moved for summary judgment on both claims. Gross opposed the motion, but the district court granted it in

---

[3] Gross argues that this fact relies on inadmissible hearsay. Regardless, as described *infra* note 5, she fails to demonstrate that there were any vacancies at the time of her discharge.

full. As to discriminatory discharge, it found that (1) Gross was not a qualified individual, (2) she was not terminated on the basis of her disability, and (3) the reason provided was not pretextual. *See Gross v. Carlisle Constr. Mats., LLC*, No. 23-cv-38, 2024 WL3461055, at *5 (N.D. Miss. July 16, 2024). As to failure to accommodate, it held that Gross could not demonstrate that she was a qualified individual or that Carlisle failed to accommodate her disability. *See id.* Gross timely appealed.

## II

We "review[] de novo a district court's grant of summary judgment, viewing 'all facts and evidence in the light most favorable to the non-moving party.'" *Cannon v. Jacobs Field Servs. N.A., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We consider first whether Carlisle was entitled to summary judgment as to Gross's discriminatory discharge claim, and then turn to her failure-to-accommodate claim.

## A

To prove a prima facie case for discriminatory discharge, a plaintiff must demonstrate that they (1) have a disability (or were regarded as having one), (2) were qualified for the position they held, and (3) were subject to an adverse employment decision on account of their disability. *Cannon*, 813 F.3d at 590 (citing *LHC Grp.*, 773 F.3d at 697). If a plaintiff makes that showing, a presumption of discrimination arises; the burden then shifts to the employer to "articulate a legitimate non-discriminatory reason for the adverse employment action." *Id.* (quoting *EEOC v. Chevron Phillips Chem. Co., L.P.*, 570 F.3d 606, 615 (5th Cir. 2009)). If the employer carries this burden, the

No. 24-60382

burden shifts back to the plaintiff "to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id.*

The district court focused primarily on whether Gross was "qualified" under the ADA. But, in its conclusion, it unequivocally stated that "Gross ha[d] not shown . . . that Carlisle terminated her because of her disability" or "that Carlisle's stated reason for the termination of her employment—her transition to long-term disability—was pretextual to support the discriminatory discharge claim." *Gross*, 2024 WL 3461055, at *5. Therefore, not only did Gross fail to make a prima facie case, but even if she had, she failed to demonstrate that Carlisle's provided reason for termination was pretextual.

On appeal, Gross does not contest the district court's findings that (1) Carlisle did not fire her because of her disability and (2) the given reason was not pretextual. Instead, she only challenges the district court's finding that she was not a qualified individual.

As noted above, the district court clearly premised its disposition on three separate grounds. "Where a district court grants summary judgment on multiple grounds, judgment will be affirmed unless the appellant negates all grounds." *Lithcon Petrol. USA Inc. v. China Petrochem. Corp.*, 372 F. App'x 478, 479 (5th Cir. 2010) (per curiam) (citing *Williams v. Cain*, 229 F.3d 468, 474 n.5 (5th Cir. 2000)). Because Gross challenges only one of the three bases upon which the district court granted summary judgment, we affirm the district court's judgment on Gross's discriminatory discharge claim.

B

Gross also appeals the district court's grant of summary judgment dismissing her failure-to-accommodate claim. To succeed on a failure-to-accommodate claim, a plaintiff must show that (1) they are a "'qualified individual with a disability;' (2) the disability and its consequential limitations

6

were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013) (emphasis omitted) (quoting *Feist v. La. Dep't of Just., Off. of the Att'y Gen.*, 740 F.3d 450, 452 (5th Cir. 2013)). Gross argues that the district court erroneously concluded that she failed to establish the first and third elements of this claim.

The ADA defines a "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment." *Id.* § 12102(1) (citation modified). Major life activities include "performing manual tasks, . . . standing, lifting, bending, . . . and working." *Id.* § 12102(2)(A).

In determining whether an individual is qualified under the ADA, we focus on the time at which they were terminated. *See Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996). We "consider[] whether [Gross] could 'perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue,' and, if not, whether 'any reasonable accommodation by the employer would enable [her] to perform those functions.'" *Id.* (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393–94 (5th Cir. 1993)).

It is undisputed that, at all relevant times, Gross's diabetic ulcers "interfered with her everyday life activities." *Gross*, 2024 WL 3461055, at *3. As the district court understood it, even if this did raise an inference that she is a qualified individual under the ADA, it was "eclipsed by . . . Gross's testimony that she could not perform any aspects of the job as production

operator or other job[s] that required weight-bearing activity such as standing or walking." *Id.* Therefore, it determined as a matter of law that she was not a qualified individual under the ADA because no reasonable accommodation would render the job performable. *See id.* at *5.

The record showcases the reality that Gross could not perform the essential functions of her job. As a production operator, she was "responsible for the operation of machinery and equipment used to manufacture" various products. According to Kellie McGowan, Carlisle's HR Manager, Gross's role predominantly required standing and lifting, and some walking, squatting, bending, reaching, twisting, and kneeling. McGowan also stated that production line workers are expected to lift "up to 10 pounds and occasionally push[] and pull[] . . . up to 70 pounds." McGowan's statements were unrefuted. Indeed, Gross agreed with McGowan's assessment before testifying that she could not perform the physical aspects of the job. She thus could not "perform the essential functions of [her] job" with or without accommodation. *Rogers*, 87 F.3d at 759 (quoting *Chandler*, 2 F.3d at 1393–94).

To the extent that Gross argues on appeal that she could, in fact, still perform physical labor, she contradicts her own testimony. Gross presented Carlisle with a doctor's note that said she needed "to do light duty or move to another department so [she] could be off [her] feet." This request came at the tail-end of her disability leave. She now claims that the "note . . . never states Gross'[s] being on her feet would endanger her health or that [she] would not be allowed to tolerate the pain in performing her job." But she answered "[c]orrect" to the following question: "[I]s it your belief that at the time you were terminated, you were unable to perform usual regular job duties as a packaging/production operator?" She cannot overcome this admission by arguing that she could have continued working in the position from

which she sought transfer due to her doctor's note, or that her transition to long-term disability was premised on animus.[4]

Although the district court rightly held that Gross could not perform the position she held at the time of her termination, it did not meaningfully consider whether she could have transferred to another position. Under the ADA, reasonable accommodations may include "reassignment to a vacant position." 42 U.S.C. § 12111(9). There is no doubt that, if other positions were vacant, including those which may be performed while seated for most of the day, a transfer would have allowed Gross to "perform the essential functions of [that] employment position." *Id.* § 12111(8); *see Toronka v. Cont'l Airlines, Inc.*, 411 F. App'x 719, 724 (5th Cir. 2011) ("An employer may be required to reassign a disabled employee to a vacant position, but only

―――――――――――――――――

[4] Gross also argues that under *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), "the fact that a disability plan administrator put Gross on long-term disability does not establish, as a matter of law, that [she] cannot perform her job with or without reasonable accommodations." The Court in *Cleveland* held that pursuing social security disability benefits does not estop an individual from pursuing an ADA claim. *See id.* at 797. There, the issue was whether the two claims conflicted with one another due to their affiliated propositions: "I am too disabled to work" and "I am not too disabled to work." *Id.* at 802. The Court held that the statutes did not conflict because the ADA considers reasonable accommodation whereas the Social Security Act "does not take the possibility of 'reasonable accommodation' into account." *Id.* at 803 (emphasis omitted). So, "[t]o survive a defendant's motion for summary judgment, [a plaintiff] must explain why that [social security] contention is consistent with her ADA claim that she could 'perform the essential functions' of her previous job, at least with 'reasonable accommodation.'" *Id.* at 798.

Gross argues that *Cleveland* stands for the proposition that "whether Gross is a qualified individual is a fact question" and her transition "to long-term disability does not conclusively determine, as a matter of law, that [she] could not perform her job 'with or without reasonable accommodation.'" But the district court did not rely solely on her transfer to long-term disability; it considered her testimony and the attendant circumstances. She did not demonstrate that she could perform any aspect of the job with such accommodations. This does not conflict with *Cleveland*.

if that is reasonable."). After all, § 12111(8) does not narrow the ADA's applicability only to the position that the individual currently holds. To be qualified, the individual merely must be able to "perform the essential functions of the employment position that such individual holds *or desires*." 42 U.S.C. § 12111(8) (emphasis added).

Gross describes several positions that she desired and would accommodate her—both existing and not—that she did not receive despite requesting them. But her examples predate the end of her employment because "there were no vacant positions available at Carlisle's plant in Senatobia, Mississippi," when she was fired.[5] Our inquiry centers on the time of Gross's dismissal: "For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant. Under the ADA, an employer is not required to give what it does not have." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997); *see also Rogers*, 87 F.3d at 760 (asking whether the accommodation could "presently, or in the immediate future, enable[] the employee to perform the essential functions of the job in question" (quoting *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995))).[6]

---

[5] Gross claims that McGowan relied on inadmissible business records in making this statement. While the declaration does rely on "Carlisle's records," "[t]he plaintiff bears the burden of proving that an available position exists that [s]he was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). Gross failed to do so. Her EEOC charge notes that she "[did] not know for certain whether there were any sitting-down positions open," but that she "could have easily switched jobs with a person in this role." And, during oral argument, Gross's counsel conceded that there is no evidence that a vacancy existed at the time of her discharge. Oral Arg., at 3:43 ("At the time that Ms. Gross was fired, there is no evidence that there was a vacant position."). Nor did she provide any other evidence that alternative reasonable positions were available. *See supra* note 2 (explaining why Gross's proposal of a line-watcher position was not reasonable and would not accommodate her). She therefore failed to carry her burden of proof.

[6] It is for this reason that Gross's request to transfer to the receiving clerk position does not save her from summary judgment. Her EEOC charge focused on Carlisle's

No. 24-60382

Gross has failed to demonstrate that any accommodation could render her current position performable, nor does she show that a vacant position existed at the time of her discharge. She therefore is not a qualified individual under the ADA.[7] We affirm the district court's judgment on Gross's failure-to-accommodate claim.

## III

Gross fails to challenge all bases under which the district court dismissed her discriminatory discharge claim, and she cannot demonstrate that she was a qualified individual under the ADA for her failure-to-accommodate claim. Accordingly, we AFFIRM the district court's judgment of dismissal.

---

allegedly wrongful discharge or failure to accommodate her at the time of termination. It did not harken back to previous failures to reasonably accommodate her disability, even when reviewed liberally. *See Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (noting that, while "the scope of an EEOC complaint should be construed liberally," we consider "the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination'" (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006))). Therefore, this alleged failure to accommodate cannot be the basis of her claim.

[7] Gross's remaining arguments—regarding the failure to engage in the interactive process or otherwise accommodate her—fall within the third prong of the failure-to-accommodate claim: the failure "to make 'reasonable accommodations' for such known limitations." *Neely*, 735 F.3d at 247 (quoting *Feist*, 740 F.3d at 452). Because Gross is not a qualified individual, her claim fails at the first element.