# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20127

United States Court of Appeals
Fifth Circuit

**FILED**

January 13, 2016

Lyle W. Cayce
Clerk

MICHAEL A. CANNON,

Plaintiff - Appellant

v.

JACOBS FIELD SERVICES NORTH AMERICA, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, HAYNES, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Jacobs Field Services (JFS), a construction company, offered Michael Cannon a job as a field engineer at a Colorado mining site. But it quickly revoked the offer after learning that Cannon had a rotator cuff impairment that prevented him from lifting his right arm above the shoulder. Cannon brought suit under the Americans with Disabilities Act (ADA). The district court granted summary judgment, finding that Cannon could not prove that he was disabled or a qualified individual. Because the first finding ignored Congress's expansion of the definition of disability when it amended the ADA in 2008 and a factual dispute exists on the second, we reverse.

No. 15-20127

I.

Cannon is a mechanical engineer with over twenty years of experience.[1] In 2010, he had surgery to repair a torn rotator cuff in his right shoulder. The surgery was unsuccessful. As a result, Cannon can no longer raise his right arm above shoulder level, and is limited in his ability to push or pull with his right arm.

In 2011, Cannon applied for a job as a field engineer with JFS. JFS offered him the job. Cannon underwent a pre-employment physical. During the exam, Cannon told the doctor about his inoperable rotator cuff injury and that he had previously taken the prescription pain reliever Ultram, which is the brand name version of the opioid Tramadol. Cannon explained that although he still had a prescription for Tramadol, he was no longer taking it. Cannon passed the drug test administered as part of the physical. The doctor cleared Cannon for the position so long as JFS offered the following accommodations for the rotator cuff injury: no driving company vehicles; no lifting, pushing, or pulling more than ten pounds; and no working with his hands above shoulder level.

JFS did not agree to the proposed accommodations. Instead, on July 18, the same day it received the "Medical Clearance" form with the list of accommodations, it determined that Cannon was physically incapable of performing the job. Although there is conflicting evidence about who made the decision to rescind the offer, the turning point occurred when human resources notified the technical services manager at the Colorado job site about the doctor's proposed accommodations and sought approval to proceed with Cannon's hiring. In response, the technical services manager stated that

---

[1] Given the summary judgment posture, this section construes the evidence in the light most favorable to Cannon.

2

No. 15-20127

Cannon would "not be able to meet the project needs and required job duties" and explained that the job required an employee "capable of driving, climbing, lifting, and walking" as the job site was located "in the mountains with rough/rocky terrain" and "spread over several miles."

A human resources representative contacted Cannon around this time. Not mentioning the seemingly unequivocal position taken by the manager that Cannon could not do the job, the HR representative informed Cannon only that JFS had concerns that he could not reach above his head with his right arm. Cannon asked whether he could contact someone to resolve the concerns and was told to call the Occupational Health Department. Cannon promptly did so and was told that JFS needed him to clarify whether (1) he could climb a ladder and (2) was still taking Ultram. Again, there was no indication that the job offer had been rescinded, and Cannon took the requests for additional information to mean that satisfactory responses would eliminate the concerns. Cannon provided the requested information, submitting documentation from his doctor stating that he was "specifically cleared for climbing vertical ladders and maintaining 3-point contact with either arm"[2] and was being weaned from Ultram.

No one from JFS followed up with Cannon to discuss the doctor's notes he had submitted. Instead, during a call on July 20, the same day Cannon submitted the clearance forms from his doctor, JFS informed Cannon that it was rescinding the offer based on his inability to climb a ladder. Cannon continued to try to prove to JFS that he was capable of climbing a ladder in an effort to have his offer reinstated—sending a video of himself climbing a ladder while maintaining 3-point contact. JFS did not respond. Cannon made

---

[2] Climbing a ladder using 3-point contact is an "OSHA-driven requirement" which is designed to prevent injury from "slipping, falling down, hitting the ground" because if a climber's feet slip, he can still catch himself with his hands, which should be on the ladder.

No. 15-20127

additional attempts to try to contact JFS and discuss his injury and limitations. These efforts were unsuccessful.

Cannon filed a complaint with the EEOC. The EEOC concluded that JFS engaged in disability discrimination because: (1) JFS failed to engage in the interactive process with Cannon; (2) providing Cannon with the requested accommodations would not have imposed an undue hardship on JFS; and (3) JFS did not demonstrate that Cannon would have posed a "direct threat to himself or to his coworkers" as a field engineer. JFS refused to engage in the EEOC-directed conciliation process, so the EEOC issued a Notice of Right to Sue. Cannon filed this lawsuit.

The district court granted summary judgment in favor of JFS. It found that Cannon's rotator cuff injury did not render him disabled under the ADA, and, even if he were disabled, he was not qualified for the field engineer position. The district court did not specifically address a failure-to-accommodate claim that the parties had briefed.

## II.

This Court reviews *de novo* a district court's grant of summary judgment, viewing "all facts and evidence in the light most favorable to the non-moving party." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Summary judgment is only appropriate if the movant has shown that there is no genuine issue as to any material fact such that the movant is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(a)).

## III.

The ADA prohibits discrimination against on the basis of a disability. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221–22 (5th Cir. 2011). As with other antidiscrimination statutes in the employment context, a plaintiff trying to show a violation of the ADA using circumstantial evidence must satisfy the *McDonnell Douglas* burden-shifting framework. *E.E.O.C. v.*

No. 15-20127

*Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009).  To make out his prima facie showing under that framework, Cannon must show that: (1) the plaintiff has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability.  *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014).  If he makes that showing, a presumption of discrimination arises, and the employer must "articulate a legitimate non-discriminatory reason for the adverse employment action."  *Chevron Phillips Chem. Co., LP*, 570 F.3d at 615.  The burden then shifts to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual.  *See id.*

### A.

Under the ADA, an individual suffers from a "disability," if that individual has "a physical . . . impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1).  The district court concluded that Cannon was not disabled because his "injured shoulder did not substantially impair[] his daily functioning."  Whatever merit that finding of no disability may have had under the original ADA, it is at odds with changes brought about by the ADA Amendments Act of 2008.  Pub. L. No. 110-325, 122 Stat. 3553 (2008).  Those amendments "make it easier for people with disabilities to obtain protection under the ADA." 29 C.F.R. § 1630.1(c)(4).  A principal way in which Congress accomplished that goal was to broaden the definition of "disability."  *Id.*  Two features of that expanded concept of disability support a finding of disability in this case.

The first aspect of the 2008 Act that helps establish Cannon's injury as a disability is its clarification that the Supreme Court and EEOC had interpreted the "substantially limits" standard to be a more demanding one than Congress had intended.  42 U.S.C. § 12101 note (ADA Amendments Act

of 2008) (expressly disapproving of prior Supreme Court decisions and EEOC interpretations of the "substantially limits" standard); *Neely v. PSEG Tex., Ltd P'ship*, 735 F.3d 242, 245 (5th Cir. 2013) (stating that the ADAAA was passed to correct the perceived misconception that the "substantially limits" standard is a demanding inquiry).  The 2008 Act thus provides "Rules of Construction Regarding the Definition of Disability," which focus on construing the "substantially limits" standard "in favor of broad coverage."   42 U.S.C. § 12102(4).  EEOC regulations implementing the 2008 Amendments follow this command in concluding that "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis," and the term "shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied" previously.  29 C.F.R. § 1630.2(j)(1)(iii)–(iv).  The inquiry in this post-amendment case is thus whether Cannon's impairment substantially limits his ability "to perform a major life activity as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(1)(ii).

There is ample evidence to support a conclusion that Cannon's injury qualifies as a disability under the more relaxed standard.  Although the district court concluded otherwise, the ADA includes "lifting" in its list of major life activities.  *See* 42 U.S.C. § 12102(2)(A) (stating that "major life activities include, but are not limited to . . . lifting, bending, speaking, [etc.]"); *see also* 29 C.F.R. § 1630.2(i) (also including "reaching" as a major life activity).  Given that lifting and reaching are "major life activities," Cannon's shoulder injury is a qualifying disability if it "substantially limits" his ability to perform such tasks.  There is certainly evidence to that effect.  Cannon and his doctor both stated that he is unable to lift his right arm above shoulder level and that he has considerable difficulty lifting, pushing, or pulling objects with his right arm.  This does not even appear to be disputed; the limitations posed by

Cannon's shoulder injury are what led JFS to rescind the offer.[3]  Less than two hours after receiving the report of Cannon's physical, the technical operations officer at the mining project wrote that the job offer should be rescinded because a field engineer must be "capable of driving, climbing, lifting and walking" and "[b]ased on the list of required accommodations Mr. Cannon will not be able to meet the project needs and required job duties."

JFS's belief that Cannon's injury resulted in substantial impairment—even if that view were mistaken—is the second reason why the 2008 amendments support a finding that Cannon was disabled.  The ADA now covers not just someone who is disabled but also those subjected to discrimination because they are "regarded as having . . . an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity."  42 U.S.C. §§ 12102(1)(C), 3(A) (emphasis added).  The amended "regarded as" provision reflects the view that "unfounded concerns, mistaken beliefs, fears, myths, or prejudice about disabilities are just as disabling as actual impairments."  29 C.F.R. § Pt. 1630, App. § 1630.2(1) (quoting 2008 Senate Statement of Managers at 9; 2008 House Judiciary Committee Report at 17).  It overrules "prior authority 'requiring a plaintiff to show that the employer regarded him or her as being substantially limited in a major life activity.'"  *Burton v. Freescale Semiconductor, Inc.*, 798

---

[3] The district court relied in large part on Cannon's own statements in finding that there was no evidence that his shoulder substantially impaired his daily functioning. Specifically, the court pointed to Cannon's statements that he was able to climb a ladder and "need[ed] no accommodation" to perform the tasks required of a field engineer.  But these statements do not undermine the evidence indicating that his injury substantially limits his ability to lift, which is all that is required to establish a disability.  Indeed, Cannon explained that he did not need an accommodation only because he compensates for his right arm's limitations through greater use of his left arm—"my reasonable accommodation is what God already gave me. . . . I have a working left shoulder to take over what my right shoulder can't do."  The medical clearance form from his doctor also emphasized that Cannon will have to compensate for his inability to use his right arm by relying more heavily on his left arm.

F.3d 222, 230 (5th Cir. 2015) (quoting *Dube v. Texas Health & Human Servs. Comm'n,* Case No. SA–11–CV–354–XR, 2012 WL 2397566, at *3 (W.D.Tex. June 25, 2012)).  The evidence favoring Cannon again easily passes muster under the revised standard requiring only the perception that he suffered from a physical impairment.[4]  The email from the technical services manager cited above, as well as other evidence such as the report from Cannon's physical, support a finding that officials at JFS perceived his shoulder injury to be an impairment.  *See id.* at 231 (holding that employer regarded the plaintiff as disabled when the supporting documentation for plaintiff's termination specifically tied "complaints about [plaintiff's] conduct to her asserted medical needs").

We thus conclude that evidence exists supporting a finding either that Cannon is disabled or was regarded as disabled.

### B.

That brings us the closer question of whether, despite Cannon's impairments, he was still qualified for the field engineer position.  To be a qualified employee, Cannon must be able to show that he could either (1) "perform the essential functions of the job in spite of [his] disability," or (2) that "a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of his job."  *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (internal quotations omitted); *see also* 42 U.S.C. § 12111(8). A function is "essential" if it bears "more than a marginal relationship" to the employee's job.  *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir. 1993), *holding modified on other grounds as discussed in Kapche v.*

---

[4] The district court applied the prior standard in rejecting the possibility that Cannon was "regarded as disabled" because "[c]limbing a ladder is not a major-life activity."  The district court also focused only on Jacobs's concerns with whether Cannon could climb a ladder; but the email expresses doubt about whether Cannon can perform multiple activities.

*City of San Antonio*, 304 F.3d 493 (5th Cir. 2002). JFS contends that driving a company vehicle and climbing a ladder are essential functions of the field engineer position and argues that Cannon cannot do either because of his prescription for painkillers and his rotator cuff injury.

We first address driving, which the district court held was essential because of the vastness of the worksite and a function that Cannon could not perform because of his Ultram prescription. Assuming that driving is an essential function of the field engineer position, a conclusion that Cannon disputes, there is sufficient evidence from which a jury could conclude that Cannon was able to perform that duty. JFS cites an unwritten, though quite sensible, policy that "employees who are taking narcotics are not permitted to operate company vehicles." But there is a dispute about whether Cannon was still taking the medication or, at the least, could have stopped taking it once he started working. The painkiller was prescribed "as needed." Cannon asserts he stopped taking the medication prior to applying and informed JFS of that prior to being told that his offer had been revoked. On his pre-employment drug test, Cannon did not test positive for any of the substances JFS tries to detect.[5] And Cannon's doctor informed JFS that Cannon was "being weaned" off Ultram. Although in some tension with Cannon's statement that he had already stopped using, the doctor's statement provides further support for the conclusion that Cannon could have performed the job without using the painkiller. To be sure, JFS can point to evidence that counters this

---

[5] The district court assumed that the drug test would have detected Ultram, explaining the negative test away on the ground that it "merely shows that he had not taken it at the time." JFS argues that this is not the case, and that the drug test only looks for illegal narcotics banned under its separate, written policy prohibiting use of those substances. Of course, if that is the case, failure to test for prescription painkillers may cast doubt on whether JFS maintains a separate unwritten policy. In any event, even discounting the drug test, the other evidence cited above is sufficient to create a fact issue about whether Cannon could have performed the job without using Ultram.

view, most notably Cannon's extensive history of Ultram use which continued after JFS rescinded the job offer. In the end, however, the evidence creates a dispute that a jury should decide about whether Cannon could have avoided taking the medication while working for JFS.

The same is true for the federal mining regulation that JFS relied on in its summary judgment motion, though the regulation was not contemporaneously cited as a reason for rescinding Cannon's offer. *See* 30 C.F.R. § 57.20001 ("Intoxicating beverages and narcotics shall not be permitted or used in or around mines. Persons under the influence of alcohol or narcotics shall not be permitted on the job."). Putting aside unresolved questions about the scope of the rule (what proximity to a mine satisfies the "around mines" standard given that Cannon was not going to be working in the mine), it only applies to those "under the influence" of narcotics and not just those with a prescription who may no longer be using. It is also not clear from the record how long Ultram would remain in Cannon's system even if he used it after working hours. For comparison's sake, just as the regulation sensibly bars persons "under the influence of alcohol" from a mine, it does not bar those who have ever consumed alcohol or who do so at home the night before a shift.

The next essential function that JFS found disqualifying is climbing a ladder. This time Cannon agrees that the field engineer job requires the ability to climb a ladder. The job site includes steep pipeline trenches and "pipe racks" that require ladders. But there is conflicting evidence about whether Cannon can climb the ladder with reasonable accommodation. Cannon's doctor submitted a medical release to JFS stating that Cannon "specifically is cleared for climbing vertical ladders and maintaining 3-point contact with either arm" despite the shoulder injury. And after learning that JFS rescinded his job offer based on its belief that the shoulder injury would prevent him from climbing a ladder, Cannon submitted a video of himself

No. 15-20127

climbing a ladder while maintaining 3-point contact. Cannon conceded at his deposition, however, that in the video he raised his injured arm above his shoulder in violation of his doctor's orders. *See Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003) ("The ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden.").

In light of the doctor's note and video, we are unable to conclude that there is no evidence supporting the view that Cannon can limb a ladder despite his impairment. The parties may have been able to get to the bottom of the "ladder climbing" question if JFS had conducted a more thorough inquiry after learning about Cannon's injury. For example, it could have questioned Cannon or his doctor at the time or asked Cannon to demonstrate an ability to climb a ladder. Given the speed at which JFS rescinded Cannon's offer, the record is thin. Because there is some evidence that supports a finding that Cannon could perform this function, summary judgment is not appropriate on this basis.

C.

That leaves pretext as the remaining basis on which the district court ruled in JFS's favor. Summary judgment rulings in employment discrimination cases based on circumstantial evidence often boil down to difficult assessments of pretext. Not so in this ADA case. The district court's finding of no pretext flowed logically from its conclusions that Cannon was not disabled and not qualified: "There can be no pretext when the facts show that Cannon was disqualified for the job and not disabled." Our contrary view that the evidence does not compel those findings also easily resolves the remaining *McDonnell-Douglas* inquiries.

Perhaps the better way to frame the question is whether JFC has asserted a legitimate nondiscriminatory reason for rescinding Cannon's offer,

a burden that is usually easily satisfied.  But JFS has never cited a reason for rescinding Cannon's offer, such as deciding to reduce the workforce at the site or having found a more experienced applicant, which is divorced from his physical impairment. It has always maintained—and the timing of events strongly supports—that it decided not to hire Cannon once it learned of his shoulder injury and the ways in which it may limit his ability to perform the job. The legitimacy of that justification turns on whether Cannon was disabled and qualified for the job.  If JFS convinces a jury that Cannon cannot perform essential functions of the job because of the injury, then it has offered a lawful reason for its decision.  But if the jury credits the evidence we have cited favoring Cannon and concludes he was disabled, yet still qualified to be a field engineer, then revoking Cannon's job offer based on his physical impairment would have constituted the discrimination that the ADA forbids.  We thus need not to address Cannon's arguments about alleged inconsistencies in who made the decision to rescind his offer, the contemporaneous justification for doing so, and whether the decision was withheld from Cannon while other JFS employees were asking him for more information. All of this can, of course, be considered at trial.

## IV.

This leaves one wrinkle.  In dismissing the disability discrimination claim, the district court did not separately address a failure-to-accommodate claim that the summary judgment briefing addressed.  This omission may have been because the findings of "no disability" and "no qualified individual" would also doom a failure-to-accommodate claim.  *See Neely*, 735 F.3d at 247 (explaining that a plaintiff must be a "qualified individual" to sustain a failure-to-accommodate claim).  Or perhaps it was because JFS had previously filed a motion to dismiss arguing that Cannon's complaint did not allege failure to accommodate.  But the district court never decided that motion to dismiss (to

which the response had sought leave to amend in the event the motion was granted), and the case proceeded to the summary judgment stage at which both sides argued the merits of such a claim in both the trial court and on appeal.

Given that the district court never dismissed the claim for pleading deficiencies, we can assess only whether summary judgment was warranted on a claim of failure to accommodate. We have already found that Cannon may be able to convince a jury that he is both disabled and qualified for the position. Although a plaintiff must usually request an accommodation to commence an interactive process that considers that possibility, he is excused from doing so in a situation like this one in which the employer was unquestionably aware of the disability and had received a report from its own doctor recommending accommodations. *Taylor v. Principal Fin. Grp., LLC*, 93 F.3d 155, 165 (5th Cir. 2009) (stating that a plaintiff bears the responsibility of requesting an accommodation only when "the disability, resulting limitations, and necessary reasonable accommodations are not open, obvious, and apparent to the employer"). And looking at the facts in Cannon's favor, there is little argument to be made that JFS engaged in the interactive process the law requires. It rescinded the offer almost immediately after learning of Cannon's impairment without further exploration of his impairment or even waiting for his responses to the questions posed by the Occupational Health Department.

\* \* \*

We REVERSE the grant of summary judgment and REMAND this case.

13