BARRY W. ASHE, UNITED STATES DISTRICT JUDGE
Before the Court is a motion to dismiss filed by defendant Merritt Hospitality, LLC ("Merritt"),[1] to which plaintiff John Doe ("Doe")[2] responds in opposition,[3] and in further support of which Merritt replies.[4] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.
I. BACKGROUND
This case involves employment discrimination claims. Doe alleges that he was terminated because of a disability and for resisting a supervisor's sexual advances.[5] He also alleges that his employer failed to offer a reasonable accommodation for his disability and that he was subjected to a hostile work environment due to sexual harassment.[6]
On January 4, 2016, Merritt hired Doe to work as a houseman at its Hilton New Orleans/St. Charles Avenue hotel ("the Hilton").[7] Doe alleges that from March 15, 2016, to March 30, 2016, the Hilton's human resources manager, Glenford Rigmaiden ("Rigmaiden"), solicited Doe for sexual favors through social media.[8] According to Doe, Rigmaiden initiated the conversation not knowing that he was speaking with Doe, and Doe identified himself to Rigmaiden and indicated that he did not want to engage in the conduct.[9] Rigmaiden allegedly continued to request sexual favors from Doe over the next few weeks.[10]
Doe also alleges that he had his prescription HIV medication delivered from *475 the pharmacy to the Hilton during his employment, and that he did not tell anyone what was in the boxes, that he is HIV-positive, or that he takes any medication.[11] According to Doe, the front-desk employees would usually sign for the packages and then give them to Doe.[12] However, on June 22, 2016, the front desk manager, Shawn Metoyer ("Metoyer"), signed for Doe's package and gave it to the Hilton's director, Tonya Davis ("Davis"), who did not give it to Doe and denies having received it.[13] Doe claims that a replacement package was sent to the Hilton, received by a front-desk employee, and then retained in Davis' office for about two weeks before Davis gave it to Doe.[14] Doe claims that he overheard another employee ask Davis if Doe needed his medication one day in July 2016.[15] Doe believes that the employee meant for Doe to hear the comment.[16] Around this time and thereafter, Davis inquired about Doe's frequent doctor's appointments and disciplined him for "extremely minor occurrences."[17]
Doe alleges that he was "on call" for the first time on January 18, 2017, and believed that he did not have to appear for work unless he was called.[18] According to Doe, when he reported for work the next day, Davis instructed him to go home and not return until he was contacted by Rigmaiden.[19] A week later, Rigmaiden called Doe in for a meeting at which Davis and Rigmaiden terminated Doe for not showing up on January 18, 2017.[20]
On January 20, 2017, Doe completed an intake questionnaire with the Equal Employment Opportunity Commission ("EEOC").[21] Doe indicated on the form that he has a disability and that the basis for his employment discrimination claim was sex and disability.[22] Doe described the discrimination as: Rigmaiden's soliciting sexual favors through social media from March 15, 2016, to March 30, 2016; Metoyer's signing for the HIV medication and not giving it to Doe on June 22, 2016; and Davis' terminating him for not calling in on January 18, 2017.[23] Doe further explained that he believes the other employees at the Hilton were aware of his HIV-positive status due to the medication incident and that he was terminated because of it.[24] Doe stated that the "on call" procedure was not explained to him before he was fired for violating it.[25] Doe indicated that he did not ask Merritt for any accommodations because of his disability.[26]
On March 25, 2017, Doe filed a charge of discrimination with the EEOC in which he indicates that he was discriminated against on the basis of sex and disability beginning on March 15, 2016, and ending on January *476 18, 2017.[27] Doe explained his claim as follows:
My employment as a Houseman began January 4, 2016. My immediate supervisor was Tonya Davis. On June 22, 2016 a personal package was delivered to my attention to the company address. The package was received/signed for by Shawn Metoyer; however, the package was never located. In January 2017 I was placed in an "on-call" status after returning from leave for a medical issue. I did not understand the "on-call" process and it was not explained to me. On January 18, 2017 my employment was terminated. The company employs more than 15 persons.
The reason for my termination was "no call, no-show". I also believe I was terminated because of my medical condition after R researched my medications.
I believe my termination was a violation of the Americans with Disabilities Act as Amended.[28]
The EEOC sent Doe a right-to-sue letter on September 28, 2017, indicating that more than 180 days had passed since Doe filed the charge and the EEOC was terminating its processing of it.[29]
On December 22, 2017, Doe filed this suit.[30] In his second amended complaint, Doe alleges that Merritt discriminated against him on the basis of disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and Louisiana employment discrimination law ("LEDL"), La. R.S. 23:2301 et seq. , by subjecting him to more severe discipline and terminating him because of his HIV-positive status, and failing to provide a reasonable accommodation for his alleged disability (Counts I & II).[31] Doe also alleges claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. , for a hostile work environment due to sexual harassment and termination in retaliation for refusing Rigmaiden's sexual advances (Counts III & IV).[32]
II. PENDING MOTION
Merritt filed the instant motion to dismiss arguing that Doe's claims for disparate discipline and failure to accommodate in Counts I and II and sexual harassment and retaliation in Counts III and IV must be dismissed because they are outside the scope of Doe's EEOC charge of discrimination; thus, Doe did not exhaust his administrative remedies as to those claims and cannot bring them in federal court.[33] Further, Merritt argues that Doe's ADA and LEDL claims for termination do not state claims for relief because HIV-positive status by itself is not a disability and Doe has not alleged that he was disabled as defined by the law.[34] Merritt further argues that, if the case is not dismissed, Doe has not established that he should be permitted to proceed under a pseudonym.[35]
*477 Doe argues that this Court should consider his EEOC intake questionnaire along with his charge of discrimination to find his sexual harassment claims are within the scope of his EEOC charge, and that he exhausted his administrative remedies as to those claims.[36] Further, Doe contends that HIV-positive status is per se a disability under the ADA and LEDL, and as such, he has stated claims for disability discrimination under those laws by alleging that he was terminated because of his HIV-positive status.[37]
III. LAW & ANALYSIS
A. Rule 12(b)(6) Standard
The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8"does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). The statement of the claim must " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Twombly , 550 U.S. at 555, 127 S.Ct. 1955 (quoting Conley v. Gibson , 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or " 'naked assertion[s]' devoid of 'further factual enhancement.' " Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly , 550 U.S. at 555-57, 127 S.Ct. 1955 ).
Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly , 550 U.S. at 570, 127 S.Ct. 1955 ). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief.' " " Id. (quoting Twombly , 550 U.S. at 557, 127 S.Ct. 1955 ). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.' " Id. at 679, 129 S.Ct. 1937 (quoting Fed. R. Civ. P. 8(a)(2) ).
In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court *478 employs the two-pronged approach utilized in Twombly . The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." Id. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. Motions to dismiss are disfavored and rarely granted. Turner v. Pleasant , 663 F.3d 770, 775 (5th Cir. 2011) (citing Harrington v. State Farm Fire & Cas. Co. , 563 F.3d 141, 147 (5th Cir. 2009) ).
A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund V. (U.S.), L.P. v. Barclays Bank PLC , 594 F.3d 383, 387 (5th Cir. 2010) (citing Collins v. Morgan Stanley Dean Witter , 224 F.3d 496, 498-99 (5th Cir. 2000) ). A court may also take judicial notice of certain matters, including public records and government websites. Dorsey v. Portfolio Equities, Inc. , 540 F.3d 333, 338 (5th Cir. 2008) ; see also Hawk Aircargo, Inc. v. Chao. , 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." Meyers v. Textron, Inc. , 540 F. App'x 408, 409 (5th Cir. 2013) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd. , 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ).
B. Failure to Exhaust Administrative Remedies
A plaintiff alleging discrimination claims must exhaust his administrative remedies prior to filing suit in the district court by filing a timely charge of discrimination with the EEOC. Jones v. City of Houston , --- Fed.Appx. ----, 2018 WL 6131132, at *5 (5th Cir. Nov. 20, 2018) (citing 42 U.S.C. § 2000e-5(f)(1) ; Taylor v. Books A Million, Inc. , 296 F.3d 376, 378-79 (5th Cir. 2002) ). In a deferral state, such as Louisiana,[38] a plaintiff must file his charge with the EEOC within 300 days from the date of the alleged discriminatory act to preserve his right to sue in federal court. DeBlanc v. St. Tammany Parish Sch. Bd. , 2015 WL 1245781, at *6 (E.D. La. Mar. 18, 2015) (citing 42 U.S.C. § 2000e-5(e)(1) (providing that a Title VII plaintiff must file a charge within 300 days after the alleged unlawful employment practice in deferral states); 42 U.S.C. § 12117(a) (incorporating Title VII remedies and procedures for ADA claims) ).
The scope of an EEOC complaint is liberally construed to determine whether a plaintiff has administratively exhausted a particular claim. Patton v. Jacobs Eng'g Grp., Inc. , 874 F.3d 437, 443 (5th Cir. 2017) (citing Pacheco v. Mineta , 448 F.3d 783, 788 (5th Cir. 2006) ). " 'On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt[ing] to achieve non-judicial resolution of employment discrimination claims.' " Id. (quoting Pacheco , 448 F.3d at 788-89 ). Balancing these considerations requires a court to *479 interpret "what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.' " Id. (quoting Pacheco , 448 F.3d at 789 ). Thus, a court engages in a " 'fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look[s] slightly beyond its four corners, to its substance rather than its label.' " Id. (quoting Pacheco , 448 F.3d at 789 ).
An EEOC intake questionnaire may be deemed a charge of discrimination if it "both satisfies the regulatory requirements of a charge and may be 'reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.' " Id. (quoting Federal Express Corp. v. Holowecki , 552 U.S. 389, 402, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008) ). In part, this requires that the intake questionnaire be verified.[39] Id. (citing 29 C.F.R. § 1601.7 ). However, an unverified intake questionnaire may be considered part of the formal charge of discrimination under certain circumstances. Id.
In Patton , the Fifth Circuit held that the plaintiff's intake questionnaire should have been considered part of his formal charge of discrimination under the facts of that case. Id. at 443-44. The charge form directs complainants to attach additional sheets if necessary, and the plaintiff filed his intake questionnaire with his formal charge of discrimination on the same day. Id. at 443. Also, "the EEOC investigation clearly encompassed" a claim stated only in the intake questionnaire, because that claim was referenced in the defendant's position statement. Id. Thus, the court concluded that the plaintiff "did in fact 'trigger the investigatory and conciliatory procedures of the EEOC' " regarding that claim, and the claim "could reasonably be expected to - and in fact did - grow out of [the] charge of discrimination." Id. at 444 (quoting Pacheco , 448 F.3d at 788-89 ).
The facts of the case at bar are distinguishable from those present in Patton . Here, Doe did not file his intake questionnaire on the same day he filed his formal charge of discrimination.[40] Indeed, he filed the intake questionnaire on January 20, 2017, and then filed his charge of discrimination over two months later, on March 25, 2018.[41] Therefore, the intake questionnaire cannot constitute "additional sheets" attached to the formal charge. Although on the charge of discrimination Doe checked the box for sex discrimination and stated that the discrimination began on March 16, 2016, Doe makes no mention of sexual harassment in his description of his claim.[42] Rather the description of the claim focuses exclusively on termination in *480 violation of the ADA.[43] Because Doe did not explain his sexual harassment claim in his charge of discrimination, and Doe does not cite any evidence in the record indicating that the EEOC investigated his sexual harassment claim, the sexual harassment claim could not reasonably be expected to grow out of the charge of discrimination. Therefore, Doe failed to exhaust his administrative remedies as to the sexual harassment claim, and Merritt's motion to dismiss is granted as to Count III.
C. ADA
The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to ... discharge ...." 42 U.S.C. § 12112(a). To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability, or was regarded as disabled; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability. Cannon v. Jacobs Field Servs. N. Am., Inc. , 813 F.3d 586, 590 (5th Cir. 2016) (citing Equal Emp't Opportunity Comm'n v. LHC Grp., Inc. , 773 F.3d 688, 697 (5th Cir. 2014) ). If a plaintiff can establish a prima facie case of discrimination, "a presumption of discrimination arises," and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. Id. Thereafter, if the defendant meets its burden, the burden of production shifts back to the plaintiff to
offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).
LHC Grp. , 773 F.3d at 702 (citing Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004) (citations and internal quotation marks omitted); Evans v. Tex. Dep't of Transp., 547 F.Supp.2d 626, 640 (E.D. Tex. 2007) ).
The ADA defines "disability" as a person who has: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment ...." 42 U.S.C. § 12102(1). "Substantially limits" is interpreted with respect to a person's ability " 'to perform a major life activity as compared to most people in the general population.' " Cannon , 813 F.3d at 591 (quoting 29 C.F.R. § 1630.2(j)(1)(ii) ). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Major life activities also include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Id. § 12102(2)(B).
The ADA's implementing regulations explain that the phrase "substantially limits" is broadly construed in favor of expansive coverage, but that whether an individual's "impairment substantially limits a major life activity requires an individualized assessment." 29 C.F.R. § 1630.2(j)(1)(i) & (iv). There are several types of impairments that "given their inherent *481 nature ... will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity." Id. § 1630.2(j)(3)(ii). In that vein, the regulations state that it should be easy to conclude that HIV infection substantially limits the major life activity of immune function. Id.
In Bragdon v. Abbott , 524 U.S. 624, 633-37, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), the Supreme Court explained in great detail the progression of an HIV infection and held that "it is an impairment from the moment of infection," "[i]n light of the immediacy with which the virus begins to damage the infected person's white blood cells and the severity of the disease." Thus, "HIV infection satisfies the statutory and regulatory definition of a physical impairment during every stage of the disease." Id. at 637, 118 S.Ct. 2196. The Supreme Court found that the evidence demonstrated that the respondent's HIV infection was a physical impairment that substantially limited the major life function of reproduction. Id. at 639-42, 118 S.Ct. 2196. In view of that holding, the Supreme Court stated that it "need not address ... whether HIV infection is a per se disability under the ADA." Id. at 642, 118 S.Ct. 2196. Therefore, a plaintiff must demonstrate that his HIV infection substantially limits a major life activity. See id.
In this case, Doe has alleged that he is HIV-positive and that his infection substantially limits a major life activity.[44] Although, Doe does not specifically state which major life activity is limited, the ADA's implementing regulations explain that an HIV infection limits immune function. See 29 C.F.R. § 1630.2(j)(3)(iii). Doe has alleged enough facts in his second amended complaint to state claims under the ADA and LEDL for termination due to his HIV-positive status.[45] See, e.g., Rodríguez-Álvarez v. Díaz , 2017 WL 666052, at *3 (D.P.R. Feb. 17, 2017) (adopting low standard for HIV status as a major life activity for purposes of surviving summary judgment, which eschewing per se rule); Rodriguez v. HSBC Bank USA, N.A. , 2015 WL 7429273, at *7 (M.D. Fla. Nov. 23, 2015) (construing regulations as creating rebuttable presumption that HIV status is a disability under the ADA); Alexiadis v. N.Y. College of Health Professions , 891 F.Supp.2d 418, 428-29 (E.D.N.Y. 2012) (factfinder could conceivably conclude plaintiff's HIV-positive status substantially limits the major life activity of the function of his immune system). Therefore, Merritt's motion to dismiss is DENIED as to Doe's ADA and LEDL unlawful termination claims.
D. Proceeding Anonymously
Doe states in his second amended complaint that he seeks to proceed anonymously "to protect his status as a person affected by HIV."[46] Merritt argues that Doe's wish to remain anonymous does not outweigh the public's right to access to court records.[47]
*482 Rule 10(a) of the Federal Rules of Civil Procedure requires that the caption of a cause name all the parties. Courts have allowed plaintiffs to proceed under pseudonyms under certain special circumstances when the cases involved "matters of a sensitive and highly personal nature, such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families." S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe , 599 F.2d 707, 712-13 (5th Cir. 1979) (quotations and citations omitted). Further, in those cases, the plaintiffs "were challenging the constitutional, statutory or regulatory validity of government activity" and "divulged personal information of the utmost intimacy; many also had to admit that they either had violated state laws or government regulations or wished to engage in prohibited conduct." Id. at 713 (citations omitted). When these factors are not present, "basic fairness dictates" that plaintiffs must proceed under their real names because "the mere filing of a civil action against other private parties may cause damage to [the] good names and reputations [of defendants] and may also result in economic harm." Id.
Weighing these factors in this case indicates that Doe should not be permitted to proceed anonymously. Doe is not challenging the validity of any governmental activity and will not have to admit to any violation of the law or regulation to pursue his disability discrimination claims. Although HIV-positive status is an intimate fact of a sensitive nature, a growing number of courts recognize that public opinion about it has become more accepting in recent years. Doe v. BrownGreer PLC , 2014 WL 4404033, at *2 (E.D. La. Sept. 5, 2014) ("public opinion about ... HIV positive status has become more diverse and accepting during the [last] 35 years"); Doe v. Pentax of America, Inc. , 2012 WL 3128968, at *1 (M.D. Fla. Aug. 1, 2012) (court denied HIV-infected plaintiff's motion to proceed anonymously, observing that plaintiff "has not shown that [HIV-related] stigma still exists or that he is likely to face any harm as a result of being named in this suit"); see also Mateer v. Ross, Suchoff, Egert, Hankin Maidenbaum & Mazel, P.C. , 1997 WL 171011, at *5-7 (S.D.N.Y. Apr. 10, 1997) (civil plaintiff with HIV not permitted to proceed anonymously in light of strongly-held principles favoring open judicial fora); Doe v. Bell Atl. Bus. Sys. Servs., Inc. , 162 F.R.D. 418, 422 (D. Mass. 1995) (plaintiff who feared she might be HIV-infected not permitted to proceed under pseudonym in sexual harassment case). Doe will not face any greater threat of retaliation than a typical employment discrimination plaintiff that proceeds under his real name, and Doe's concern about the possible future harm is outweighed by the public's interest in an open judicial forum and basic fairness to the Merritt employees accused of undertaking discriminatory actions. Therefore, Doe must proceed under his real name.
IV. CONCLUSION
Accordingly,
IT IS ORDERED that Merritt's motion to dismiss (R. Doc. 39) is GRANTED as to Doe's claims for disparate discipline and failure to accommodate in Counts I and II, sexual harassment in Count III, and retaliation in Count IV. The motion is DENIED as to Doe's ADA and LEDL termination claims in Counts I and II.
IT IS FURTHER ORDERED that Merritt's motion to require Doe to proceed under his real name is GRANTED, and all further pleadings shall indicate Doe's legal name.

R. Doc. 39.

Plaintiff is proceeding under a pseudonym to protect his identity due to his HIV-positive status. R. Doc. 37 at 2.

R. Doc. 42.

R. Doc. 45.

R. Doc. 37 at 5-8.

Id.

Id. at 2.

Id.

Id.

Id.

Id. at 2-3.

Id. at 3.

Id.

Id.

Id.

Id.

Id. at 4.

Id.

Id.

Id.

R. Doc. 42-1.

Id. at 1-2.

Id. at 2.

Id.

Id.

Id. at 3.

R. Doc. 42-2.

Id.

R. Doc. 39-5.

R. Doc. 1.

R. Doc. 37 at 5-7.

Id. at 7-9.

R. Doc. 39-1 at 5-14. Merritt also contends that, even if this Court considers Doe's EEOC intake questionnaire to be part of his charge, Doe's sexual harassment claims were not timely filed with the EEOC. Because the Court finds that Doe's intake questionnaire is not part of his formal charge of discrimination, the Court will not address the timeliness issue.

Id. at 14-18.

Id. at 18-19.

R. Doc. 42 at 2-6. By failing to present any arguments to the contrary, Doe has conceded that he did not exhaust his administrative remedies as to his claims for disparate discipline and failure to accommodate in Counts I and II, and for retaliation in Count IV. Indeed, neither Doe's EEOC charge nor his intake questionnaire raised any claims for disparate discipline, failure to accommodate, or retaliation. Therefore, Merritt's motion to dismiss is GRANTED as to Doe's disparate discipline, failure to accommodate, and retaliation claims.

Id. at 6-7.

States with a state or local administrative mechanism are referred to as deferral states and those without such an agency are referred to as non-deferral states.

Doe concedes that his intake questionnaire cannot stand alone as a charge of discrimination because the signature is not verified. R. Doc. 42 at 5.

R. Docs. 39-3 & 42-1.

Id.

R. Doc. 39-3. Checking the sex discrimination box is not sufficient. See Givs v. City of Eunice , 512 F.Supp.2d 522, 536-37 (W.D. La. 2007) ("Even though plaintiff checked both the race and retaliation boxes on the EEOC complaint, the Court does not accept that merely checking the retaliation box is sufficient to exhaust his administrative remedies."); Williams v. Health Tex. Provider Network , 2017 WL 2608813, at *3 (N.D. Tex. June 1, 2017) (checking box on charge of discrimination, without further detail or explanation, is insufficient to exhaust administrative remedies), adopted , 2017 WL 2616952 (N.D. Tex. June 15, 2017).

Id.

R. Doc. 37 at 6.

Claims brought under Louisiana's employment discrimination law "are analyzed using the same framework and precedent as ADA claims." Johnson v. JP Morgan Chase Bank, N.A. , 293 F.Supp.3d 600, 615 (W.D. La. 2018) (citing Wyerick v. Bayou Steel Corp. , 887 F.2d 1271, 1274 (5th Cir. 1989) ; Scott v. Turner Indus. Grp., LLC , 2011 WL 5023840, at *4 (M.D. La. Oct. 19, 2011) ("The ADA and LEDL provide similar rights and remedies, such that Louisiana courts routinely reference federal ADA jurisprudence when considering LEDL claims.") ).

R. Doc. 37 at 2.

R. Doc. 39-1 at 19.